# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| STREAMTECH ENGINEERING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:22-cv-00550-AGF |
| | ) |
| STEVEN A. HORCHER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Plaintiff StreamTech Engineering LLC ("StreamTech") for a temporary restraining order ("TRO"). Plaintiff filed a motion styled as a motion for preliminary injunction on May 23, 2022, in which it requested an order enjoining Defendant Steven Horcher from working for Defendant Precision Warehouse Design, LLC ("PWD") on or before June 1, 2022. On May 25, 2022, Plaintiff filed an amended motion clarifying that it is seeking a TRO rather than a preliminary injunction. (Doc. No. 18). Defendants Horcher, PWD, Marc DeWall, and Haynie Mayhew received notice of Plaintiff's motion on May 23, 2022. Following a telephone status conference held with counsel on May 23, 2022, the Court set a hearing on the TRO for May 26, 2022, the date requested by StreamTech. StreamTech, PWD, Horcher, Dewall, and Mayhew appeared at the hearing through counsel. Upon review of the record, the motion for TRO is denied.

## BACKGROUND

StreamTech alleged in its verified amended complaint and presented evidence by way of affidavits and exhibits at the hearing that it develops and sells solutions to complex problems in the material handling industry. (Verified Amended Compl. Doc. No. 17 at ¶ 11). It has developed proprietary data, formulas, programs, devices, methods, techniques, and processes (the "Alleged Trade Secrets"). *Id*. at ¶ 12. Alan Miller, the President of StreamTech, explains that the company focuses on technology that can be integrated with PLC controls. It developed products that automate document printing and inserting for use in e-commerce. One such product is the Foldserter, which has been granted a patent. (Miller Affidavit, Doc. No. 18-1, at ¶ 5). StreamTech explains that its products require formal research and development, and knowledge of customer requirements and enhancements. This information is not well known in the industry. *Id*. at ¶ 6. StreamTech protects the Alleged Trade Secrets, in particular its secure software repository, by restricting access to certain employees and requiring a small number of employees with access to sign confidentiality agreements. *Id*. at ¶ 20.

Horcher was StreamTech's former Engineering Director until he left the company on May 20, 2022. *Id*. at ¶ 9. He is scheduled to begin employment with Defendant PWD on June 1, 2022. Horcher was in charge of the technical and execution aspects of StreamTech. *Id*. at ¶ 10. He managed the development of StreamTech's Warehouse Control Software product and created long term plans for the expansion of StreamTech's software products. *Id*. at ¶ 11. He did not normally write software, but he was familiar with the software, plans for future products, and the application of StreamTech's products. *Id*. at ¶¶ 12-13. Horcher

had frequent contact with most or all of StreamTech's customers.  *Id*. at ¶ 17.  Miller explains that because "PWD's products are incorporated into custom systems built for private customers, it will be impossible to parse out how StreamTech's proprietary information may have been used in their development."  *Id*. at ¶ 24.

StreamTech believes Horcher's move to PWD will result in lower sales to PWD and increased competition from PWD in the materials handling industry.  *Id*. at ¶ 18.  StreamTech alleges that PWD is both a customer and a competitor of StreamTech.  StreamTech identified one company, KGPCo., that is a customer of both StreamTech and PWD.  (Spear Affidavit, Doc. No. 19, at ¶ 9).

DeWall and Mayhew are the General Manager and Principal of PWD, respectively, as well as its owners.  For a few of its customers, PWD purchases automated sorting, insertion, and labeling equipment from StreamTech which it integrates into its own products and sells to end-use customers.  (Verified Amended Compl. at ¶ 21).  StreamTech claims the equipment is developed using its Alleged Trade Secrets.  *Id*. at ¶ 22.  Over the past years, StreamTech alleges that PWD has begun to develop its own controls engineering capabilities.  *Id*. at ¶ 36.  As a result of this development, PWD reduced its reliance on StreamTech's products.  *Id*. at ¶ 37.  StreamTech claims hiring Horcher would allow PWD to quickly develop controls engineering capabilities equivalent to its own, misappropriate StreamTech's Alleged Trade Secrets, and compete with StreamTech.  *Id*. at ¶¶ 41-42.

Horcher signed a Confidentiality and Non-Solicitation Agreement with StreamTech when he began his employment in May of 2012.  (The "Confidentiality Agreement," Doc. No. 4-1).  The Confidentiality Agreement contains a number of covenants not to compete.

Relevant to this motion, paragraph 5(b) of the Confidentiality Agreement states that for two years after the termination of his employment, Horcher:

> will not provide, sell or market, or endeavor to provide, sell or market any Competing Products/Services to any of [StreamTech]'s customers with whom [Horcher] had business contact on behalf of [StreamTech] . . . or otherwise solicit or communicate with any such customers for the purpose of selling or providing any Competing Products/Services.

(Confidentiality Agreement at 3).

Paragraph 5(c) of the agreement provides that for two years after the termination of his employment with StreamTech, Horcher will not:

> be employed by, work for, or provide services to, any customer, supplier, or competitor of [StreamTech] in any capacity that is similar (or related in function) to that in which [Horcher] worked for [StreamTech] or in which [Horcher] will be providing services that are similar to the services that [Horcher] rendered for [StreamTech], if the likely effect of [Horcher]'s employment with or work for such customer would be to displace or diminish the customer's need for [StreamTech] or its products and/or services.

*Id*.

StreamTech asserts a claim of Breach of Contract (Count I) and Misappropriation of Trade Secrets (Count III) against Horcher; a claim of Tortious Interference with Contract (Count II) and Misappropriation of Trade Secrets (Count IV) against PWD; a claim of Civil Conspiracy against Horcher, DeWall, and Mayhew (Count V); and a claim for violation of the Defend Trade Secrets Act ("DTSA") (Count VI)[1] against both Horcher and PWD.

Defendants presented, by way of affidavits, the following information. DeWall attests in his affidavit that PWD provides material handling solution and consulting services

---

[1] StreamTech's DTSA claim is labeled "Count V", but it is the sixth claim in the Verified Amended Complaint.

in the same industry as StreamTech.  (DeWall Affidavit, Doc. No. 10, at ¶ 3).  However, PWD and StreamTech are not in direct competition with each other, and he does not consider PWD to be a customer of StreamTech.  *Id*. at ¶ 4.  Instead, PWD is a limited reseller of StreamTech's Foldserter product.  *Id*.  PWD subcontracts to StreamTech with approximately four end-use customers because those customers use Foldserter in their systems.  *Id*. at ¶¶ 4-5.  PWD generally uses off the shelf or open-source products and prefers not to use proprietary coding.  *Id*. at ¶ 6.

Horcher attests in his affidavit that, with the exception of StreamTech's Foldserter product, the Alleged Trade Secrets are not unique in the industry.  (Horcher Affidavit, Doc. No. 16 at ¶ 4).  Horcher further explains that the code he has produced for StreamTech is open source and not hidden or kept confidential.  *Id*. at ¶ 5.  Horcher claims that StreamTech does not protect its Alleged Trade Secrets.  The project files and information about StreamTech's products are shared freely among StreamTech's employees, the documents are not labeled confidential, and StreamTech does not inform its employees that this information is confidential.  Moreover, the information is shared with potential customers both when soliciting their business and current customers during the implementation of projects.  StreamTech has admitted that most of its employees do not have confidentiality agreements.

Horcher is a resident of Texas, where he has lived for the past twenty years.  *Id*. at ¶ 2.  He has worked in the material handling industry prior to his employment with StreamTech, with Cornerstone Automation Systems, where he had a similar role.  *Id*. at ¶ 4.  In his role at StreamTech, Horcher did not write code for its proprietary software.  The code

is written by a third party, although Horcher did work with the author. Horcher decided it was time to leave his role at StreamTech to reduce his travel and advance his career. (DeWall Affidavit at ¶ 7). PWD offered Horcher a position at the company. At that time, neither Horcher nor PWD were aware of Horcher's Confidentiality Agreement. *Id*. (Horcher Affidavit at ¶ 6).

      Initially, PWD offered Horcher a role that would involve programming of conveyor and sortation systems—not including Foldserter or other custom written software. (DeWall Affidavit at ¶ 8). Upon learning of the Confidentiality Agreement, PWD amended Horcher's job offer to Relationship Manager, where Horcher will assist with sales and the technical process for PWD's large existing customers. *Id*. This position will mostly involve Horcher assisting with the flow of projects for the large accounts. *Id.* at ¶ 9. Horcher will not be involved in programming or writing code and he will not use any of StreamTech's information in this role. *Id*. (Mayhew Affidavit, Doc. No. 11, at ¶ 6). Furthermore, Horcher will not solicit new clients for PWD. (DeWall Affidavit at ¶ 13). DeWall attested in his affidavit that PWD does not expect or intend to displace or diminish its current business with StreamTech and it plans to continue that business—and potentially expand it as more end-use customers adopt the Foldserter product. *Id*. at ¶ 14. DeWall and Mayhew stated in their affidavits that they do not want StreamTech's confidential or proprietary information, as they have separate products and software they use, which are not compatible with StreamTech's products. *Id*. at ¶ 12. (Mayhew Affidavit at ¶ 6).

## DISCUSSION

**Subject Matter Jurisdiction**

StreamTech alleges this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a), as StreamTech is a citizen of Missouri, and Horcher, DeWall, Mayhew, and PWD are citizens of Texas. Specifically, StreamTech, an LLC, claims it is a citizen of Missouri because it is organized under the law of the State of Missouri and maintains its principal place of business in St. Louis County, Missouri. It further claims PWD, also an LLC, is a citizen of Texas because it is organized under the laws of the State of Texas and maintains its principal place of business in Dallas County, Texas. However, "an LLC's citizenship is that of its members for diversity jurisdiction purposes . . . ." *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). StreamTech has provided no information as to the citizenship of its members or PWD's members. Because of this omission, the complaint does not adequately establish the existence of diversity jurisdiction. *See* Fed. R. Civ. P. 8(a)(1) ("[a] pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction").

However, the Court notes StreamTech has raised a claim pursuant to the DTSA, a federal statute that provides a private right of action. *See* 18 U.S.C. § 1836(b)(1) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."). The Court has jurisdiction over the DTSA claim pursuant to 28 U.S.C. § 1331. *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota*

*LLC*, 843 F.3d 325, 329 (8th Cir. 2016) ("Federal question jurisdiction exists if the well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.") (quoting *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998)). StreamTech's remaining claims are so related to its DTSA claim that they form part of the same Article III case or controversy, and as such the Court has supplemental jurisdiction over those claims.  28 U.S.C. § 1367.  StreamTech is directed to amend its complaint to adequately allege the existence of subject matter jurisdiction.

**StreamTech's Motion for a Temporary Restraining Order**

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).  "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted).  The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted.  *Gelco Corp. v. ConistonPartners*, 811 F.2d 414, 418 (8th Cir. 1987).

Even when a plaintiff has a strong claim on the merits, however, "[f]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *Phyllis Schlafly Rev. Trust v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoted case omitted).  "Irreparable harm occurs when a party has no adequate remedy at law, typically

because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  The moving party bears the burden to establish the need for a preliminary injunction.  *Chlorine Institute, Inc. v. Soo Line R. R.*, 792 F.3d 903, 914 (8th Cir. 2015).

**Success on the Merits**

The Court will first consider the probability of success on the merits.  On the limited record before the Court, it concludes that StreamTech has not shown a reasonable probability of any imminent breach of the Confidentiality Agreement.

StreamTech contends that Horcher should be enjoined from working at PWD, asserting that such employment is precluded by the restrictive covenants in paragraphs 5(b) and 5(c) of the Confidentiality Agreement.  Paragraph 5(b) states Horcher "will not provide, sell or market, or endeavor to provide, sell or market any Competing Products/Services to any of [StreamTech]'s customers…" (Confidentiality Agreement at 3).  Paragraph 5(c) prohibits Horcher from working for "any customer, supplier, or competitor of [StreamTech] in any capacity that is similar" to his role at StreamTech "if the likely effect of [Horcher]'s employment with or work for such customer would be to displace or diminish the customer's need for" StreamTech's products.  *Id*.

StreamTech has failed to show a reasonable probability that Horcher will violate either covenant in his role at PWD.  StreamTech argues that Horcher has violated paragraph 5(b) simply by accepting a job offer from PWD.  But paragraph 5(b) prohibits Horcher from soliciting StreamTech's customers; it does not prohibit Horcher from accepting a job offer with PWD.  Furthermore, StreamTech has not shown Horcher is likely to solicit its

customers. Horcher, Mayhew, and DeWall testify in their affidavits that Horcher will not recruit new customers for PWD. Instead, Horcher will exclusively work on sales to PWD's existing large customers. StreamTech argues that, even if Horcher does not interact with new customers, he may still infringe upon paragraph 5(b), noting that PWD and StreamTech have at least one customer in common—KGPCo. The parties had little information to present regarding the dates or nature of KGPCo.'s relationship with either entity. At the hearing, however, counsel for both Horcher and PWD agreed that pending further court proceedings, Horcher would not contact or have any dealings with KGPCo. As such, StreamTech has not shown a reasonable probability that Horcher will violate paragraph 5(b).

StreamTech has likewise failed to show a reasonable probability that Horcher will violate paragraph 5(c), which prohibits him from working for StreamTech's customers or competitors in a similar role if the likely effect of his work would be to diminish the customer's need for StreamTech's products and services. This is so for two reasons. First, while PWD initially proposed having Horcher perform a role similar to his role at StreamTech, after learning of the Confidentiality Agreement, PWD designed a new role for Horcher. That role is not similar to the role he performed for StreamTech.

Second, on this record, there is no evidence that Horcher's employment will diminish either PWD's reliance on StreamTech products or StreamTech's other customer's reliance on its products. Horcher will not solicit new customers, including any of StreamTech's current customers, for PWD. Instead, he will help manage services for PWD's existing large accounts—with the exception of KGPCo, assuming it even falls into that category.

Moreover, Horcher's role is unrelated to the development of products which might displace PWD's reliance on StreamTech. To the extent PWD has reduced its use of StreamTech's products, StreamTech's own employee attested that PWD began to decrease its business with StreamTech more than five years ago. (Spear Affidavit at ¶ 7).

"It is the most basic principle of contract law that parties are bound by the terms of the contracts they sign and courts will enforce contracts according to their plain meaning…." *Lehman v. Auto. Invs., LLC*, 608 S.W.3d 733, 738 (Mo. Ct. App. 2020) (quoted case omitted). Here, the unambiguous language of the non-compete agreement only prohibits Horcher from soliciting StreamTech's customers or from working for StreamTech's customers or competitors in a similar role and if the result of his employment would be to displace or diminish its customer's demands for StreamTech products and services. StreamTech has not shown a reasonable probability that Horcher will violate his non-compete agreement. As such, an injunction is not warranted. *See Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 (8th Cir. 2021) (finding district court erred in enjoining employee from violating non-compete agreement where the language of the agreement showed the non-compete provision was inoperable).

**Irreparable Harm**

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted). StreamTech contends that Horcher's employment with PWD will result in irreparable harm. It points to language in the Confidentiality Agreement and argues that Horcher recognized,

by signing the agreement, that a breach or threatened breach of the agreement will give rise to an "irreparable injury" and that StreamTech is entitled to injunctive relief including a temporary restraining order. (Confidentiality Agreement at 5). However, such contractual language alone does not establish an irreparable harm. *See*, *e.g.*, *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) ("contractual agreements alone do not control the district court's exercise of its equitable discretion"); *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1130 (9th Cir. 2020) ("the terms of a contract alone cannot require a court to grant equitable relief"); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) ("While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief."); *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate").

The Court concludes that StreamTech has not established that it will suffer an irreparable harm. Although it appears StreamTech believes Horcher will use its Alleged Trade Secrets to enhance PWD's control design program, it has no evidence that will occur, and failed to specify how such harm will occur. "Speculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R–7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012). *See also Phyllis Schlafly Revocable Tr. v. Cori*, No. 4:16CV01631

JAR, 2016 WL 6611133, at *4 (E.D. Mo. Nov. 9, 2016) (finding claims that defendant's employees may have copied all or part of an alleged trade secret and may be sharing the information with defendants too speculative to support a TRO).  Assuming for purposes of this motion that Horcher is in possession of Alleged Trade Secrets that StreamTech has taken steps properly to protect, StreamTech's allegations that Horcher will broadly use StreamTech's Alleged Trade Secrets to assist PWD in developing its products, without more, are insufficient to establish irreparable harm.  *See Breadeaux's Pisa, LLC v. Beckman Bros.*, No. 21-06162-CV-SJ-BP, 2022 WL 1447947, at *3 (W.D. Mo. Apr. 21, 2022) (finding franchisee had failed to allege irreparable harm because it did not plausibly allege that it would suffer any damages to its goodwill, reputation, customer relationships, or trademarks).

    Moreover, Defendants' testimony indicates PWD has no intention of using any of StreamTech's proprietary information in its products and Horcher's own role will not involve the use of any proprietary information.  PWD has stated that it uses open-source products as these products are easier to maintain, and as such has no interest in developing products that involve confidential processes.  As stated above, upon learning of the Confidentiality Agreement, PWD altered Horcher's future role to Relationship Manager, in which Horcher will assist with the management of projects for large customers.  Although StreamTech contends that, given the nature of the industry, Horcher's role will eventually evolve to take on obligations similar to those he had at StreamTech, this suggestion is entirely speculative.  StreamTech has not presented sufficient evidence establishing that any infringement of its trade secrets or customer contacts is so "certain and great and of such

imminence" as to require injunctive relief. *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996).

**Remaining *Dataphase* Factors**

The remaining *Dataphase* factors, the balance between this harm and the injury that granting the injunction will inflict on other parties litigant and the public interest, do not warrant the requested relief. On this record, the public interest does not weigh toward either party. Injunctive relief is an extraordinary remedy. Although StreamTech argues that it may suffer harm to its trade secrets and customer contacts if Horcher is not enjoined, while Horcher will suffer minimal harm by deferring employment for a few weeks, this is not enough to justify relief where StreamTech has not shown the Confidentiality Agreement is likely to be breached or such harm is imminent. As such, injunctive relief is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that StreamTech's Motion for Temporary Restraining Order is **DENIED**. (Doc. No. 18).

**IT IS FURTHER ORDERED** that StreamTech's Motion for Preliminary Injunction is **DENIED as moot**. (Doc. No. 5).

**IT IS FURTHER ORDERED** that StreamTech shall file an amended complaint adequately alleging subject matter jurisdiction by **June 3, 2022**.

*/s/ Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of May, 2022.